PEOPLE *v.* OWEN.

1. CRIMINAL LAW—ACCESSORY BEFORE FACT UNDER COMMON LAW
   DEFINED.

   At common law, an accessory before the fact is one who
   was not present, actually or constructively, when the of-
   fense was committed, but who counseled, procured, or com-
   manded another to commit it.

2. SAME—DISTINCTION BETWEEN ACCESSORIES BEFORE FACT AND
   PRINCIPALS ABOLISHED—COMMON-LAW RULES APPLICABLE TO DE-
   TERMINE GUILT AS ACCESSORY.

   While the distinction between accessories before the fact
   and principals in a crime has been abolished by statute,
   it is necessary to apply common-law rules to determine
   whether a person who is absent when a crime is committed
   is guilty as a principal under the statute.

3. SAME—WHEN ACCUSED GUILTY AS ACCESSORY BEFORE FACT.

   Where a burglary was committed, in order to hold defend-
   ant as an accessory before the fact, and therefore guilty
   as a principal under the statute, it was essential to es-
   tablish that he counseled, encouraged, or urged others to
   commit it, or in some way aided in its commission, and
   that he was not present at its commission.

4. SAME—ASSUMPTION THAT JURY BELIEVED ACCUSED NOT PRESENT
   WARRANTED UNDER EVIDENCE.

   Where there was evidence tending to show that defend-
   ant was not present when a burglary was committed, the
   jury had a right to so believe, and for the purpose of de-
   termining whether he was guilty as an accessory before
   the fact, it is proper to assume that they did so find.

5. BURGLARY—POSSESSION OF STOLEN PROPERTY ALONE NOT SUF-
   FICIENT TO CONVICT ACCUSED AS ACCESSORY BEFORE FACT.

   Where there is other evidence tending to show the accused
   was an accessory before the fact to a burglary, possession
   by him of the stolen property may be considered, but where
   there is no other evidence, possession is without probative

[1]Criminal Law, 16 C. J. § 125; [2]Id., 16 C. J. §§ 103, 125; [3]Id.,
16 C. J. §§ 126, 129; [4]Id., 16 C. J. § 2290; 17 C. J. § 3571; [5]Burglary,
9 C. J. §§ 144, 145; Larceny, 36 C. J. § 433.

force; a different rule being applicable where charge is larceny.

6. SAME—TRIAL—INSTRUCTIONS ERRONEOUS UNDER EVIDENCE.

Where, in a prosecution for burglary, the case was tried on the theory that defendant was present and personally assisted in its commission, and the defense was an *alibi*, a supplementary charge, delivered after the jury had been out and returned for further instructions, that if they found defendant was not present at the scene of the crime they were, nevertheless, at liberty to find him guilty if they further found that the offense was jointly undertaken by him with others, was erroneous, where the only evidence connecting him with the offense, outside of possession of the stolen oil 24 hours later, was a statement by him that he was going out and try to find some oil, which is in form an innocent declaration.

7. INDICTMENT AND INFORMATION—ELECTION BETWEEN COUNTS NOT REQUIRED WHERE SAME TRANSACTION COVERED BY SAME TESTIMONY.

Election between counts may not be required, on the ground that distinct offenses are charged, where they are committed at the same time and are covered by the same testimony.

8. BURGLARY—BREAKING AND ENTERING IN NIGHTTIME OR DAYTIME —ELECTION NOT REQUIRED.

Where an information contained two counts, one charging breaking and entering in the nighttime with intent to commit larceny, and the other charging an offense under 3 Comp. Laws 1915, § 15293, breaking and entering in the daytime with intent to commit larceny, both springing from the same transaction and covered by the same testimony, and the guilt of the accused of the one offense or the other depended merely on whether the offense was committed in the nighttime or daytime, there was no error in refusing to compel an election between the counts.

Exceptions before judgment from Kalamazoo; Weimer (George V.), J. Submitted October 13, 1927. (Docket No. 127.) Decided December 1, 1927.

Harold Owen was convicted of breaking and enter-

⁶Burglary, 9 C. J. § 151; Criminal Law, 16 C. J. §§ 2485, 2486; ⁷Indictments and Informations, 31 C. J. § 359; ⁸Burglary, 9 C. J. § 103.

ing a dwelling house in the nighttime with intent to commit larceny.    Reversed.

*Howard W. Cavanagh* and *Harry C. Howard,* for appellant.

*William W. Potter,* Attorney General, *Le Roy H. Bibby,* Prosecuting Attorney, and *Paul M. Tedrow,* Assistant Prosecuting Attorney, for the people.

FLANNIGAN, J.    Defendant Owen was charged with breaking and entering the dwelling house of one Bert Moyer in the nighttime with intent to commit the crime of larceny.    The Moyer home is located about 3 miles east of Vicksburg in Kalamazoo county, and is 27 miles from Battle Creek.    The property stolen consisted of 2 cans of peppermint oil worth between $400 and $500 and an automatic shotgun.    Defendant was convicted and the case is here on exceptions before sentence.

The officers investigating the burglary concluded John and Milo Culp were concerned in it.    They were arrested and confessed, implicating defendant and one Bert Dabbs.    When arraigned at the circuit they pleaded guilty and when defendant was brought to trial they were in custody awaiting sentence.    They testified as witnesses for the people.    Evidence offered by the people was ample to support a finding that all four were present, aiding, abetting, and assisting each other in the commission of the burglary, and that defendant, with the assistance of Dabbs, broke and entered the house and brought out the property, or that he stood guard on the outside to give warning of the approach of danger.    It is undisputed the stolen oil was found in the possession of defendant the following day.    The defense was *alibi.*    Defendant introduced testimony tending to show he was at Battle

Creek, where he resides, when the burglary was committed.

The case was tried on the theory defendant was present at the scene of the crime and personally assisted in its commission. The jury was instructed, in substance, a conviction would be warranted if they found the breaking and entry of the building with intent to steal was the joint undertaking of the four, and that defendant was present with the others when the burglary was accomplished, whether he entered the house or stationed himself on watch outside. With this instruction no fault is found.

In a supplementary charge, delivered after the jury had been out for a time and returned to the courtroom for further instruction, the court correctly defined an accessory before the fact; pointed out that the common-law distinction between accessories before the fact and principals had been abrogated by statute, and that persons who aided and abetted the commission of a felony, though not personally present, might lawfully be convicted and punished as principals, and instructed that, if they found defendant was not present at the scene of the crime, they were, nevertheless, at liberty to convict if they further found the burglary was jointly undertaken by him and the others; that he helped plan and arrange for its commission and aided, abetted, and encouraged the others to commit it. To the submission at this stage of the trial of an alternative theory of guilt no exception was taken, but error was properly assigned on the instruction on the ground there was no evidence tending to show defendant an accessory before the fact.

At common law, an accessory before the fact is one who was not present, actually or constructively, when the offense was committed, but who counseled, procured, or commanded another to commit it. 16 C. J. p. 134; 1 Wharton's Criminal Law (11th Ed.), p. 335. Where, as with us, the distinction between ac-

cessories before the fact and principals is abrogated by statute so that participants in a crime who would be accessories before the fact at common law are called and punished as principals, it is still necessary to apply the common-law rules in order to determine whether a person who is absent when a crime is committed by another is guilty as a principal under the statute. 16 C. J. p. 134. Assuming the burglary was committed by Dabbs and the Culps, to hold defendant an accessory before the fact, it was essential to establish he counseled, encouraged, or urged them to commit, or in some way aided in the commission of the offense; and that he was not present at its commission. There was evidence tending to establish the element of absence. If, as they had a right to do, they believed the testimony introduced by defendant, the jury was justified in finding he was not present at the commission of the crime, but at Battle Creek, 27 miles away. For the purposes of this discussion, it is proper to assume they did so find.

Save for the fact defendant was in possession of the stolen oil within 24 hours after the burglary, for evidence tending to connect him as an accessory before the fact, the sole reliance of the people is upon the witness John Culp. Inspection of his testimony fails to disclose any such evidence. It appeared the witness and defendant were acquainted and once roomed together. August 21, 1926, the day of the burglary, the witness was employed as a truck driver. He quit work at noon, but returned about 1:30 p. m. and took the truck without his employer's permission. Regarding his subsequent movements that afternoon until he drove out of Battle Creek, he testified:

"At 1:30 I went down to my folks' and stayed there about two hours. No one with me. Then I went to 40 Green street (his rooming house) and saw nobody but the landlady. From there I went down on Jackson street and saw Harold Owen and Bert Dabbs. I

went to Owen's restaurant in search of Mr. Dabbs.
\*   \*   \*   I remained there a half hour.   \*   \*   \*
About 4 o'clock I went out and drove up on Upton
avenue to get some gasoline.   Harold Owen and Bert
Dabbs went with me.   \*   \*   \*   I got some gas on Up-
ton avenue and went from there to Harold's house (on
Upton avenue) and then back down to the restaurant
again.   \*   \*   \*   After we drove down town we
started out Lake avenue for Vicksburg.   I should judge
it was then right around a quarter of five.   \*   \*   \*
The reason we started off toward Vicksburg in quest
of oil is that on the Saturday night before, Bert Dabbs
asked him (Milo Culp who was working in the Moyer
neighborhood) if he knew anybody who had oil out
there.   \*   \*   \*   He (Milo) said he didn't know.
\*   \*   \*   Before I left Battle Creek and started for
Vicksburg Mr. Owen and I had a talk about where
we were going.   He said he was going out and try
to find some oil.   \*   \*   \*   I am the man who fur-
nished the car, furnished the gas and furnished the
lunch for this expedition."

The foregoing comprises all the witness testified
was said or done by the parties until they separated,
defendant, as the jury presumptively found, remaining
in Battle Creek, and Dabbs and the witness, in the
truck surreptitiously obtained, drove away in the
direction of the Moyer residence.   Their inquiry of
Milo Culp, who did not know of the location of pepper-
mint oil, but who did know that "Bert Moyer was the
nearest place that raised it," and the evidence connect-
ing them with the commission of the offense, justifies
the inference Dabbs and the witness, who were room-
ing together at the time, planned while at Battle
Creek an invasion of the Moyer home with intent
to steal any oil there found.   But if they did it does
not appear by the testimony of John Culp, or else-
where in the record, they communicated their intention
to defendant, or that he otherwise learned of their
criminal purpose; or encouraged them to commit this or
any burglary or larceny; or agreed to receive the fruits

of any burglary or larceny committed by them; or that a joint enterprise having for its object acquisition of peppermint oil or other form of personal property by criminal means was mentioned by Dabbs or Culp to defendant or by him to them while together at Battle Creek, or previously.

If defendant said, as claimed, he was "going out and try to find some oil," it was in form an innocent declaration. Standing alone, it was consistent with a purpose to obtain oil legitimately rather than illegitimately. Disassociated, as on this branch of the case it must be, from the evidence tending to show his presence at the commission of the offense, the remark is devoid of criminal tinge. Certainly it may not be construed as a suggestion or request they burglarize for oil in his absence for the joint benefit of all three. Considered in connection with the evidence showing defendant's presence and personal participation, as it might be on the other branch of the case, the remark and all other of the sayings and doings of the parties at Battle Creek would be of weighty significance. But, as serving to connect defendant with its commission when his absence from the scene of the crime is taken for granted, the testimony relied upon by the people becomes colorless.

In cases where there is other evidence tending to show the accused an accessory before the fact to a burglary, the jury may consider in connection with it possession by him of the property stolen. But where, as in this case, there is no such other evidence, possession is without probative force. Where the charge is larceny a different rule is applied. *People* v. *Gordon,* 40 Mich. 716; *Stuart* v. *People,* 42 Mich. 255; *People* v. *Sligh,* 48 Mich. 54; *People* v. *McDonald,* 163 Mich. 552. In the state of the evidence the instruction excepted to should have been omitted.

A count was added, charging defendant under 3

Comp. Laws 1915, § 15293, with breaking and entering the house in the daytime with intent to commit larceny. Defendant's counsel moved to compel an election between counts, and error is assigned on the refusal of the court to grant the motion. This court has frequently held election between counts cannot be required on the ground distinct offenses are charged where they are committed at the same time and are covered by the same testimony. *People* v. *Warner*, 201 Mich. 547, and cases cited. There is no good reason why a different rule should be applied where the distinct offenses spring out of the same transaction and are covered by the same testimony and where guilt of the accused of the one offense or the other depends merely on whether the criminal acts were committed in the daytime or nighttime.

The remaining assignments of error have been considered. A number of them are clearly without merit, and such as may be debatable are not likely to arise on another trial.

For the error pointed out the conviction is reversed, and a new trial granted.

SHARPE, C. J., and BIRD, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.

The late Justice SNOW took no part in this decision.