PEOPLE v HODO

PEOPLE v FIDEL

1. CRIMINAL LAW—AIDING AND ABETTING—INSTRUCTIONS TO JURY—
    EVIDENCE.

    An instruction to a jury concerning aiding and abetting in the
    commission of a crime is proper only where the evidence
    presented at trial supports such a theory of guilt.

2. CRIMINAL LAW—ACCESSORY BEFORE THE FACT.

    At common law an accessory before the fact was defined as one
    who counselled, procured, or commanded another to commit an
    offense but who was not present either actually or construc-
    tively when the crime was committed.

3. CRIMINAL LAW—ACCESSORY BEFORE THE FACT—PRINCIPAL—STAT-
    UTES.

    An accessory before the fact by statute is treated the same as a
    principal, but the common law definition of accessory before
    the fact is nonetheless employed to ascertain whether an
    accused, who was not present at the time the crime was
    committed, is guilty as a principal under the statute (MCLA
    767.39).

4. CRIMINAL LAW—PRINCIPAL—AIDING AND ABETTING.

    An accused need not be present at the scene of a crime to be
    charged as a principal where the evidence shows that the
    accused procured, counselled, aided or abetted in the commis-
    sion of the offense.

5. CRIMINAL LAW—AIDING AND ABETTING—INSTRUCTIONS TO JURY—
    EVIDENCE—CIRCUMSTANTIAL EVIDENCE.

    A trial court did not err by instructing a jury concerning aiding

REFERENCES FOR POINTS IN HEADNOTES
[1–7] 53 Am Jur, Trial §§ 646, 647.
[8] 53 Am Jur, Trial § 677.
[9] 29 Am Jur 2d, Evidence §§ 249, 251–257, 267.
[10, 11] 53 Am Jur, Trial §§ 332, 333.
[12–14] 21 Am Jur 2d, Criminal Law § 494.

and abetting where there was ample evidence presented, albeit circumstantial, to permit the jury to determine whether the defendant aided and abetted in an armed robbery by either planning the crime or by furnishing the necessary transportation with knowledge of its ultimate use.

6. CRIMINAL LAW—APPEAL AND ERROR—INSTRUCTIONS TO JURY—
SCOPE OF REVIEW.
In reviewing a trial court's charge to a jury the instructions are viewed as a whole rather than in small excerpts.

7. ROBBERY—ARMED ROBBERY—INSTRUCTIONS TO JURY—AIDING AND
ABETTING.
A trial court charge to a jury on aiding and abetting in an armed robbery case was not insufficient where the Court of Appeals found, upon viewing the instructions as a whole, that the trial court read the information, the statute governing armed robbery, and the statute governing aiding and abetting, and where the trial court fully explained the elements of and the intent required to perpetrate the offense, and where there were no misstatements of the law or significant distortion of the evidence.

8. CRIMINAL LAW—AIDING AND ABETTING—EVIDENCE—BURDEN OF
PROOF.
A trial court did not err by failing to instruct the jury that the guilt of an aider and abetter must be proven beyond a reasonable doubt where the court charged the jury that there was no distinction between a principal and an aider and abetter, and that a principal's guilt must be proven beyond a reasonable doubt.

9. CRIMINAL LAW—TRIAL—EVIDENCE—RELEVANCY OF EVIDENCE—DIS-
CRETION.
The determination of whether or not evidence is relevant rests within the sound discretion of the trial court.

10. CRIMINAL LAW—DIRECTED VERDICT—EVIDENCE.
A defendant's motion for a directed verdict of acquittal may be granted only where there is no evidence at all, either direct or circumstantial, on each material element of the offense charged; in the event the requisite evidence is presented, it is submitted to the trier of fact for a determination of whether such evidence established guilt beyond a reasonable doubt.

11. CRIMINAL LAW—DIRECTED VERDICT—EVIDENCE.
A trial court did not err by denying a criminal defendant's

motion for a directed verdict and submitting the case to a jury, where from a careful review it is readily apparent that there was evidence presented on each material element of the offense that one or more of the defendants either participated in or aided and abetted in the offense.

12. CRIMINAL LAW—LESSER INCLUDED OFFENSES—INSTRUCTIONS TO JURY.

A judge is not obliged to instruct on a lesser offense unless the jurors can reasonably infer from the evidence, or lack of evidence, that the greater offense was not committed and the lesser offense was committed.

13. CRIMINAL LAW—LESSER INCLUDED OFFENSE—INSTRUCTIONS TO JURY.

There is no evidence tending to support a lesser included offense, unless a question of fact exists with regard to an element of the greater offense that is not an element of the included offense.

14. ROBBERY—ARMED ROBBERY—LESSER INCLUDED OFFENSES—INSTRUCTIONS TO JURY.

A trial court did not err by failing to instruct a jury on the lesser included offenses of armed robbery where the evidence was uncontroverted and no conflicting evidence was presented that a hotel was robbed at gunpoint and that cash in a paper bag and a money box were taken by the perpetrators and therefore there was no evidence to support a charge on a lesser included offense.

Appeal from Recorder's Court of Detroit, Elvin L. Davenport, J. Submitted Division 1 November 14, 1973, at Detroit. (Docket Nos. 15162, 14552.) Decided March 4, 1974.

Herman Hodo and Joseph Fidel were convicted of armed robbery. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert E. Berg, Jr.,* Assistant Prosecuting Attorney, for the people.

*Ray Reynolds Graves,* for defendant Joseph Fidel.

*Michael C. Moran,* Assistant State Appellate Defender, for defendant Herman Hodo.

Before: V. J. BRENNAN, P. J., and T. M. BURNS and VAN VALKENBURG,* JJ.

T. M. BURNS, J. Defendants Joseph Fidel and Herman Hodo were jointly tried by a jury and found guilty of armed robbery. MCLA 750.529; MSA 28.797. They were sentenced to a term of from 2-1/2 to 15 years imprisonment on April 5, 1972, and appeal.

Evidence presented at trial disclosed that during the early morning hours of May 16, 1967, a man, later identified as John Wesley Brown, and a woman ascended an enclosed staircase to the second floor lobby of the H & I Hotel in Detroit, and rang the doorbell to gain admittance. The night clerk went to the door and allowed the two to enter. The couple inquired about renting a room for the night. As the night clerk turned to the hotel register, the man grabbed her, placed a gun to her right temple, bound her hands behind her back, and taped her mouth and eyes. The assailant then went down a hallway and returned with another individual who was bound, gagged, and blindfolded. At this point a resident of the hotel who had just closed the first floor bar rang the doorbell which was located on the first flight of stairs. The assailant looked through a window in the door and described the unintended intruder to the night clerk who explained that he was a resident in the hotel. While waiting for the door to

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

be opened, the resident descended the stairs to the first flight and rang the doorbell for a second time. As he stood on the first flight, he met defendant Hodo. After ringing the bell, the resident turned his back on defendant Hodo and proceeded up the stairs to the door. The hotel door opened and he was jerked inside. A scuffle ensued. The resident was hit on the head with a gun, bound in a similar fashion as the other victims, and placed with them.

Subsequently, all three victims were led down a hallway to a room normally occupied by the night clerk and were seated on a bed. In the room was a safe inconspicuously draped with a table cloth. The safe was also used as a table. A money box and a bag containing a large amount of cash for the next day's expenses at the bar and hotel were under the safe. Shortly after the victims were seated on the bed, they were joined by the hotel's resident janitor who had likewise been bound, gagged, and blindfolded.

After all the victims were in the room, one of the participants in the crime left and opened a back door. One or more persons entered and walked to the room containing the safe. An attempt was made to move the safe. One of the perpetrators went out the back door and returned accompanied by a rolling object. The safe was loaded on this object and rolled down the hallway to the back door. Someone came back to the room, whispered something to another, and they all departed.

Shortly thereafter the victims were discovered, released from their bondage, and the police were summoned. The safe was found abandoned and unopened on a stairway near the back door. However the cash box and money under the safe were missing.

The police began an investigation of the robbery and located a witness who was walking through an alley behind the hotel when the robbery was in progress. The witness explained that as he approached the rear of the building he noticed a parked panel truck bearing a license plate containing a 61 or 16 in the number. He recalled the color of the truck as either white and orange or beige and orange with the letter "U" on the side. At about this time two individuals got into the truck and it pulled away. He also saw a blue car, parked about a block away, drive off. Concluding from the witness's description that a U-Haul truck had been used in the robbery, the officers began checking the various rental agencies. An agent was located by the police who did have a U-Haul panel truck bearing a State of Maryland license plate reading 1606 HE. A rental contract was produced which revealed that on May 15, 1967, the vehicle along with a dolly used to move appliances was rented to defendant Fidel. Information from defendant Fidel's driver's license was copied into the rental contract, and the contract was signed by defendant Fidel in the agent's presence. In addition, the rental agent related that when the truck was rented by defendant Fidel, two men were waiting outside for him in a blue Pontiac automobile. One of the individuals in the car was identified as defendant Hodo. On the following day, May 16, 1967, the panel truck was returned before the rental agent opened for business. At approximately 9:30 a.m. defendant Fidel appeared and picked up what was left of his deposit after deducting the rental fee.

Further investigation by the police disclosed that a blue Pontiac was registered to defendant Fidel. The owner of the hotel and bar indicated

that he had known defendant Fidel for approximately 10 to 15 years. In response to a question as to why he kept such a large sum of cash on hand, the owner stated that the following day was payday for area workers and that he had been cashing their checks for a number of years. After the evidence was presented to the jury, the defendants were found guilty of the armed robbery. Defendants raise a number of issues which will be discussed and decided in the manner presented below.

The trial court instructed the jury on the law of aiding and abetting the commission of a crime. Defendant Fidel argues that there was insufficient evidence produced at trial to permit the trial court to instruct the jury on the question of whether he aided and abetted in the armed robbery.

An instruction to the jury concerning aiding and abetting in the commission of a crime is only proper where the evidence presented at trial supports such a theory of guilt. *People v Adams,* 35 Mich App 408; 192 NW2d 625 (1971).

At trial the prosecution viewed defendant Fidel as an accessory before the fact, contending that he furnished the transportation, *i.e.,* the U-Haul truck, knowing it was to be used for the robbery and that he alone had the necessary information concerning the operation of the hotel to initially create and formulate the robbery plan.

At common law an accessory before the fact was defined as one who counselled, procured, or commanded another to commit an offense but who was not present either actually or constructively when the crime was committed. Although by statute an accessory before the fact is now treated the same as a principal, MCLA 767.39; MSA 28.979, the common-law definition is nonetheless employed to

ascertain whether an accused who was not present at the time the crime was committed is guilty as a principal under the statute. *People v Owen,* 241 Mich 111; 216 NW 434 (1927).

There was no evidence presented at trial which would justify the conclusion that defendant Fidel was present at the scene of the crime. However, an accused need not be present at the scene of the crime to be charged as a principal where the evidence shows that the accused procured, counselled, aided or abetted in the commission of the offense. *People v Owen, supra;* MCLA 767.39; MSA 28.979.

The evidence adduced at trial pertaining to defendant Fidel aiding and abetting in the armed robbery may be capsulized as follows: defendant Fidel along with defendant Hodo and another unidentified individual drove to a U-Haul rental agent in defendant Fidel's blue Pontiac auto on May 15, 1967, and rented a dolly used to move appliances and a U-Haul panel truck bearing a Maryland license plate reading 1606 HE. Later that evening, the H & I Hotel was robbed at gun point. Defendant Hodo was identified at the scene at the time the robbery was being committed. The victims of the robbery were bound and blindfolded thereafter restricting the witnesses' recollection of what happened to what could be heard which included the opening and closing of doors, footsteps, and the whispering of people exiting and entering. One victim heard the hotel safe, which had been discreetly covered, being placed on an object and rolled away. A witness walking through an alley behind the hotel during the commission of the robbery observed a vehicle with similar markings and license plates as that rented by defendant Fidel parked at the rear of the hotel. The witness

observed the vehicle pull away and also saw a blue automobile drive off which was parked about a block away. The cash placed under the safe was taken. Defendant Fidel had known the owner of the hotel for 10 or 15 years and thus was in a position to know that it was customary for the hotel to have a large amount of money on hand in order to cash area workers' paychecks on the following day.

Upon a review of the foregoing evidence, we are persuaded that there was ample evidence presented, albeit circumstantial, to permit the jury to determine whether defendant Fidel aided and abetted in the armed robbery by either planning the crime or by furnishing the necessary transportation with knowledge of its ultimate use. Accordingly, we hold that the trial court did not err by instructing the jury concerning aiding and abetting.

Defendant Hodo attacks the substance of the aiding and abetting charge on the grounds that the trial court did not properly instruct the jury on the requisite elements of aiding and abetting. Defendant Hodo's assertion is based upon certain selectively extracted statements taken from the instruction. However, it must be noted that to avoid construing instructional statements out of context, we review the charge to the jury as a whole rather than in small excerpts. *People v Harper,* 43 Mich App 500; 204 NW2d 263 (1972), *lv den* 389 Mich 759 (1973).

Viewing the instructions as a whole, we find that the trial court read the information, the statute governing armed robbery, and the statute covering aiding and abetting. The trial court fully explained the elements of and the intent required to perpetrate the offense. There were no misstate-

ments of the law or significant distortion of the evidence. Therefore defendant Hodo's assertion that the charge to the jury was insufficient is without merit.

Next both defendants assert that the trial court erred by not instructing the jury, even though requested, that to find the defendants guilty as aiders and abettors, the verdict must be beyond a reasonable doubt.

The trial court charged the jury on reasonable doubt generally and on reasonable doubt where as in the instant case circumstantial evidence was present. The court then correctly charged the jury that the distinction between principals and aiders and abettors had been abrogated and thus the guilt, if any, of the latter was the same as a principal. The trial court concluded by instructing the jury that to find the defendants guilty, the verdict must be beyond a reasonable doubt and that if they found the prosecution had not proven the defendants' guilt beyond a reasonable doubt, the jury was to return a verdict of not guilty.

Here the jury was left with but one interpretation of the foregoing instructions. An aider and abettor is treated as a principal. If they found one or both defendants aided and abetted in the crime he was to be treated as a principal whose guilt was to be proven beyond a reasonable doubt. Accordingly, the jury was not misled. Moreover, as previously recounted, an aider and abettor is treated as a principal. MCLA 767.39; MSA 28.979. Therefore by instructing the jury that a principal's guilt must be proven beyond a reasonable doubt, the trial court in effect charged that an aider and abettor's guilt must likewise be proven. Consequently where, as here, the jury is properly charged that an aider and abettor is viewed as a

principal and that a principal's guilt must be proven beyond a reasonable doubt an instruction that the guilt of an aider and abettor must be proven beyond a reasonable doubt would merely be redundant and serve no useful purpose and indeed may very likely confuse the jury. Therefore, inasmuch as the trial court charged the jury that there is no distinction between a principal and an aider and abettor and that a principal's guilt must be proven beyond a reasonable doubt, the trial court did not err by failing to instruct the jury that the guilt of an aider and abettor be proven beyond a reasonable doubt and defendants were not prejudiced thereby.

Turning to the evidence presented at trial, defendant Fidel contends that proof showing that he owned a blue Pontiac automobile was irrelevant and of no probative value and should have been stricken.

The determination of whether or not evidence is relevant rests within the sound discretion of the trial court. *People v Finnister,* 33 Mich App 283; 189 NW2d 835 (1971), *lv den* 386 Mich 781 (1972).

In the case at bar evidence that defendant Fidel owned a blue Pontiac automobile (1) corroborated the U-Haul agent's testimony that defendant Fidel arrived to rent the van in a blue Pontiac and (2) in view of a witness's testimony that a blue car was near the scene of the robbery, it was another piece of circumstantial evidence in the chain of evidence. Thus it cannot be said that the evidence complained of was either irrelevant or of no probative value. Therefore, we hold that the trial court did not abuse its discretion by admitting evidence that defendant Fidel owned a blue Pontiac automobile.

Defendants next argue that the trial court erred

by denying a motion for a directed verdict of acquittal.

A motion for a directed verdict of acquittal may only be granted where there is no evidence at all, either direct or circumstantial, on each material element of the offense charged. In the event the requisite evidence is presented, it is submitted to the trier of fact for a determination of whether such evidence established guilt beyond a reasonable doubt. *People v Abernathy,* 253 Mich 583; 235 NW 261 (1931); *People v Garcia,* 33 Mich App 598; 190 NW2d 347 (1971).

It would serve no useful purpose to again recount the evidence and testimony adduced at trial. Suffice to say that from a careful review it is readily apparent that there was evidence presented on each material element of armed robbery that one or more of the defendants either participated in or aided and abetted in the offense. Therefore the trial court did not err by denying the motion for a directed verdict and submitting the case to the jury. Inasmuch as there was sufficient evidence to submit the question of the defendants' guilt to the jury, defendants' other argument that the verdict was against the great weight of the evidence is likewise not persuasive.

Finally, defendant Hodo argues that the trial court erred by not instructing the jury on the lesser included offenses of armed robbery notwithstanding that no such instructions were requested.

In *People v Cardigan,* 41 Mich App 629; 200 NW2d 446 (1972), we observed that:

"A judge is not obliged to instruct on a lesser offense unless the jurors can reasonably infer from the evidence, or lack of evidence, that the greater offense was not committed and that the lesser offense was committed. *People v Gregory Thomas,* 38 Mich App 777, 779;

197 NW2d 97, 98 (1972); *People v Membres,* 34 Mich
App 224; 191 NW2d 66 (1971)."

Unless a question of fact exists with regard to an
element of the greater offense that is not an
element of the included offense, there is no evi-
dence tending to support the lesser included of-
fense. *People v Loncar,* 4 Mich App 281; 144
NW2d 801 (1966), *lv den* 379 Mich 760 (1967).

Here the evidence is uncontroverted that the H
& I Hotel in Detroit was robbed at gunpoint and
that cash in a paper bag and a money box were
taken by the perpetrators. Consequently there is
no conflicting evidence giving rise to the question
of fact as to whether the greater offense of armed
robbery was committed. Therefore, there was no
evidence to support a charge on a lesser included
offense. Thus, the trial court did not err by failing
to instruct the jury on the lesser included offenses
of armed robbery.

Affirmed.

All concurred.