PEOPLE *v.* LONCAR.

1. CRIMINAL LAW—THREE COUNTS IN INFORMATION—PREJUDICE.
Defendant's contention in prosecution for robbery armed that trial court erred in denying his motion to quash 2 of 3 counts in information, those of kidnapping, robbery armed, and safe robbery, for the reason that the 3, being separate and distinct crimes, were wrongfully joined together and such joinder was prejudicial *held,* not well founded, where the 3 counts flowed from the actions of the various participants at the same time in the single transaction of obtaining, with a deadly weapon, the victims' property, and each count required substantially a showing of the same facts and circumstances (CL 1948, § 750-.529).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 27 Am Jur, Indictments and Informations §§ 129, 130.
[2] 53 Am Jur, Trial §§ 511, 513, 514.
[3] 58 Am Jur, Witnesses § 3.
[4, 5] 20 Am Jur, Evidence § 263.
[6] 46 Am Jur, Robbery §§ 58, 66, 70.
[7] 53 Am Jur, Trial §§ 796–798.
[8] 46 Am Jur, Robbery § 25.
   21 Am Jur 2d, Criminal Law §§ 115, 118, 119, 124, 136.
[9] 53 Am Jur, Trial §§ 800–802.
[10] 5 Am Jur 2d, Appeal and Error § 884.

2. SAME—INSTRUCTION—QUASHED COUNTS—REQUEST TO CHARGE.

Defendant's contention that trial court erred in prosecution for robbery armed in failing to instruct the jury to disregard two counts in the information, for kidnapping and safe robbery, which were quashed at the end of the people's case, *held*, not well taken, since defendant failed to request the court to make such instruction (CL 1948, § 750.529; GCR 1963, 516).

3. SAME—FAILURE TO CALL RES GESTAE WITNESS—PREJUDICE.

Failure of people in prosecution for robbery armed to indorse and call as a witness a police officer, alleged to be a *res gestae* witness, *held*, not to have prejudiced a substantial right of defendant, under record showing officer merely stood guard at the gasoline station, whereas the robbery took place at the victims' house (CL 1948, § 750.529).

4. SEARCHES AND SEIZURES—ADMISSIBILITY AS TO CODEFENDANT— SOURCE OF EVIDENCE.

An exhibit illegally seized from one defendant, suppressed as to that defendant, but admitted into evidence against codefendant in a prosecution for robbery armed without disclosure of from whom it had been obtained *held*, proper, where codefendant had the maximum right of cross-examination consistent with the situation and necessary to his defense, since the admissibility of documentary evidence with reasonable limitation for the protection of the rights of a codefendant is within the sound discretion of the trial court (CL 1948, § 750.529).

5. CRIMINAL LAW—DOCUMENTARY EVIDENCE SUPPRESSED AS TO ONE DEFENDANT—MISCARRIAGE OF JUSTICE.

Miscarriage of justice in prosecution for robbery armed *held*, not to have resulted from admission of documentary evidence suppressed as to one defendant because it was illegally seized from him, but admitted into evidence against a codefendant, appellant, notwithstanding wide cross-examination with regard thereto had been permitted, in view of provisions of code of criminal procedure (CL 1948, § 769.26).

6. SAME—TRIAL—INSTRUCTIONS—INCLUDED OFFENSES.

Refusal of trial court in prosecution for robbery armed to instruct the jury concerning the offense of attempt to commit robbery armed *held*, proper, where record indicates the robbery was a success, some participants were armed, and there were no disputed facts which would justify instructing jury it could find defendant had committed only the element of attempt to commit robbery armed (CL 1948, §§ 750.92, 750.529).

7. SAME—INSTRUCTIONS—LESSER-INCLUDED OFFENSES.

The law does not authorize a jury in a criminal case to find a defendant guilty of a lesser offense than the one charged unless there is evidence justifying them in so doing.

8. SAME—ROBBERY ARMED—ALIBI.

One who joins in plans for an armed holdup that is subsequently successfully executed is guilty of robbery armed, as charged, or, if the jury believed his alibi, not guilty (CL 1948, § 750-.529).

9. SAME—LESSER-INCLUDED OFFENSE INSTRUCTION—DISPUTED FACTUAL ELEMENT.

A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense.

10. SAME—ROBBERY ARMED—CLAIM OF PERJURY—INVESTIGATION.

Conviction of defendant of robbery armed is not reversed because of alleged perjury during the trial by participant in the robbery who had pleaded guilty, where claim of perjury was investigated pursuant to direction of the Supreme Court during the interval following trial and before defendant perfected his appeal and the resultant finding of the investigation was that the alleged perjurer had told the truth at the trial (CL 1948, § 750.529).

Appeal from Oakland; Kane (Edward T.), J. presiding. Submitted Division 2 December 7, 1965, at Lansing. (Docket No. 10.) Decided September 27, 1966. Leave to appeal denied by Supreme Court April 20, 1967. See 379 Mich 760.

Joseph Loncar was convicted of robbery armed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *S. Jerome Bronson,* Prosecuting Attorney, and *Thomas G. Plunkett,* Chief Appellate Lawyer, for the people.

*Joseph Loncar, in propria persona.*

McGREGOR, J.  Defendant Loncar appeals his conviction and sentence for robbery armed.[1]  He and codefendant Joseph Welsh were jointly tried by jury under an information originally charging: count 1–kidnapping; count 2–robbery armed; count 3–safe robbery.  At the opening of the trial, counsel for both defendants made two motions, first to dismiss the count of kidnapping, based upon lack of evidence, and second, to the effect that the three counts in the information, being for separate and distinct crimes, were wrongfully joined together and such joinder was prejudicial to the defendant.  Both motions were denied at that time, but at the conclusion of the people's case, count 1 and count 3 were dismissed as to both Loncar and Welsh.

At the time of this trial, similar cases against two other accomplices, Kabala and Wilson, had been concluded by pleas of guilty.  A fifth participant, Rosetta, was dead from a police bullet in his attempted escape.  The people's evidence showed that by prior arrangement, the five men had planned the robbery at defendant Loncar's home in Lincoln Park on September 4, 1962, and later that night, all five went to Royal Oak in three cars, one a red Cadillac convertible owned by defendant Loncar.  They met at a doughnut shop and upon leaving there, Wilson and Rosetta went with Welsh past the home of a Mr. and Mrs. Levy.  Shortly thereafter, Welsh left Wilson's car, entered Loncar's car, while Wilson and Rosetta returned to the Levy's home and knocked.  Wilson and Rosetta informed the Levys that there was trouble at one of Mr. Levy's gasoline stations (Mr. Levy owned the Oakland County Gas & Oil Company, which operated a number of gasoline stations).  When Mr. Levy opened the door, Wilson and Rosetta put guns in his face.  They bound and

---

1 CL 1948, § 750.529 (Stat Ann 1954 Rev § 28.797).—REPORTER.

gagged both Mr. and Mrs. Levy, taking about $540
from him, and the keys to a Royal Oak gasoline
station and the combinations to two safes therein.
The keys and combinations were given by Wilson to
Kabala, waiting outside, who then left.   Several
telephone calls came to the Levy residence, which
calls were answered by Rosetta, and Mr. Levy was
given to understand that there were other accom-
plices who had gained entrance to his office, which
was located a mile or so from the residence, and
that these other parties could not open the safe,
even though they had the combination.   Mr. Levy
explained to Rosetta that this particular safe had
to be struck a blow or jiggled in some fashion, even
if the correct combination had been manipulated.
Mr. Levy was blindfolded and taken in a car to his
office, where Kabala and Rosetta required Mr. Levy
to open the safe, and at the same time Welsh and
Wilson returned to the Levy home.   At the gasoline
station, while the attention of Kabala and Rosetta
was distracted by the amount of money in the safe,
Mr. Levy obtained a loaded shotgun which he had
hidden in the office, and shot and wounded both
Kabala and Rosetta.   Kabala ran out the front door
of the building; Rosetta retreated under Mr. Levy's
desk and, at the command of Mr. Levy, threw out
his pistol, whereupon Mr. Levy permitted Rosetta
to leave the premises.   Mr. Levy recognized the
voice of defendant Welsh, a former employee, but
did not identify any of the actual participants as
being defendant Loncar.   In answer to a telephone
call from Mr. Levy, a police car came to the gasoline
station.   Other police cars were alerted and the
officers in one of them in the immediate vicinity
became suspicious of a red Cadillac convertible
which was leaving the area.   When the police car
approached it, the Cadillac took evasive measures
and sped from the neighborhood; these actions fur-

ther excited the suspicion of the police. After a chase, it finally stopped several miles from Royal Oak, and the occupants were apprehended. The driver of the Cadillac was defendant Loncar; the passenger was the wounded Rosetta, now dead from a police bullet. The other participants escaped.

A police officer testified that Loncar, shortly after his arrest, said that the other members—naming all except codefendant Welsh—had met at his residence in Lincoln Park and planned the holdup and were to reassemble there to split up the loot. He further testified that the Lincoln Park police were alerted to be on watch at Loncar's home and that subsequently, a card with Welsh's telephone number on it was found on Loncar's person. Welsh had been picked up in the early hours of the morning by the Lincoln Park police as he approached Loncar's home, and was taken to the police station. His wallet and some papers were taken from him. An hour later the Royal Oak police brought him to Royal Oak where he was booked on these charges.

Defendant Loncar testified in his own behalf and with supporting witnesses, claimed an alibi, namely, that he was in the city of Lincoln Park at the time the crimes were alleged to have been perpetrated by the actual participants. Defendant Loncar gave an exculpatory explanation as to how the deceased Rosetta came to be in his vehicle.

Defendant Loncar appeals to this Court contending that the trial court, among other errors, erred (a) in denying defendant's motion to quash 2 of 3 counts at the commencement of trial and failing to subsequently instruct the jury to disregard the two quashed counts; (b) in denying defendant's motion to dismiss on the ground that the people failed to indorse a *res gestae* witness; (c) in admitting into evidence as "people's exhibit #12" a piece of paper found on codefendant Welsh, suppressed as to co-

defendant Welsh, but used against defendant Loncar, who was not allowed by cross-examination to show that it was found on defendant Welsh; (d) in refusing to instruct the jury concerning the offense of attempt to commit robbery armed; and (e) in failing to instruct the jury that due process of law was denied defendant because of the use of perjured testimony in the trial.

Defendant Loncar's contention that he had been prejudiced by being required to stand trial to the three counts is not well founded. These three counts flowed from the actions of the various participants at the same time in the single transaction of obtaining, with a deadly weapon, the victim's property. Each charge was one of fact, at least until the people's proofs were completed. There was creditable evidence that this defendant, with codefendant Welsh and the other three participants, did plan, aid, and abet in the whole transaction, which required substantially a showing of the same facts and circumstances in support of each charge. All of the actions of the participants were material to the charge of robbery armed. There was no reversible error in this regard. The record does not disclose that defendant requested the court to instruct the jury that the offenses of kidnapping and safe robbery should be ignored, hence cannot be advanced on appeal. See GCR 1963, 516. *People* v. *Andrus* (1951), 331 Mich 535. *People* v. *Cabassa* (1930), 249 Mich 543.

Was Officer Bentley, who arrived at the victim's office a few minutes after two participants had left and was ordered by his superior officer to stand guard, a *res gestae* witness? The evidence showed that the armed robbery took place at the victim Levy's home before he was brought to the gasoline station. Evidence further showed that Officer Bentley did not see or pursue the defendant, but remained

at the gasoline station alone. Is not the defendant ignoring the fact that he was not convicted of safe robbery? The denial of defendant's motion to dismiss because of the alleged failure to indorse and call Officer Bentley was within the sound discretion of the court. There was no prejudice of a substantial right of the defendant.

Defendant Loncar's claim of error in denial of a claimed right to fully cross-examine a witness concerning an item of documentary evidence (people's exhibit #12), the piece of paper found on codefendant Welsh on which was purported to be, in Loncar's handwriting, the victim's safe combination, is next considered. Codefendant Welsh, because it was obtained from him as a result of unlawful search and seizure, moved to suppress the document. The trial court suppressed it as to codefendant Welsh, but admitted it into evidence against defendant Loncar, over Loncar's objection. The trial court allowed the defendant Loncar great latitude in his right to cross-examine as to source, except to name or indicate codefendant Welsh's possession thereof. Testimony especially under cross-examination clearly showed that such exhibit was not found on defendant Loncar at the time it came into the possession of the police, but was first found in the police station. Defendant was confronted by an expert witness, Officer VanStratt of the State crime laboratory, who testified that in his opinion it was in the handwriting of defendant Loncar, and who was subjected to cross-examination. The only evidence excluded was the fact that the document was found in the possession of the codefendant Welsh. This issue has not been adjudicated by the courts of this State, so far as reasonable search can determine. In *Sparf* v. *United States* (1895), 156 US 51 (15 S Ct 273, 39 L ed 343) the United States Supreme Court held that the fact that the objection to evidence is

made in the name of two defendants, jointly tried, does not justify the court in ruling it out as to both, when the evidence is obviously incompetent against one and obviously competent against the other, holding that the court should exclude the evidence as to the one and admit it as to the other.

The defendant is not very persuasive in showing that the method used by the trial court invaded the defendant's constitutional rights. (Const 1908, art 2, § 19.) Defendant had the maximum right of cross-examination consistent with the situation and necessary to his defense. The admissibility of the documentary evidence with reasonable limitation for the protection of the rights of a codefendant is within the sound discretion of the trial court. Illegality of seizure of evidence as to one person may not affect the admissibility thereof as to another person. *United States* v. *Granello* (SD NY 1965), 243 F Supp 325.

The objection to the use of people's exhibit #12 appears valid to us and our examination of the record convinces us that it was error to permit the wide cross-examination with regard thereto. However, in view of the provision of the code of criminal procedure (CL 1948, § 769.26 [Stat Ann 1954 Rev § 28.1096]) we are not convinced that a miscarriage of justice resulted.

Was there any evidence to support defendant's requested charge by the court to the jury of "attempt to commit the offense of robbery armed"? Upon a careful scrutiny of the evidence it is clear and irrefuted that the planned robbery was a success, that some of the participants were armed, that two participants (Wilson and Rosetta) took $540 from the victim. It is clear that there were no disputed issues of fact which would justify instructing the jury that it could find that the defendant had committed only the element of the attempt to com-

mit robbery armed.[2] This being the case, the defendant was not entitled to have a lesser charge included. The law does not authorize a jury in a criminal case to find a defendant guilty of a lesser offense than the one charged unless there is evidence justifying them in so doing. One who joins in plans for an armed holdup that is subsequently successfully executed is guilty of robbery armed, as charged, or—if the jury believed his alibi—not guilty.

"A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense." *Sansone* v. *United States* (1965), 380 US 343, 350 (85 S Ct 1004, 13 L ed 2d 882), *Sparf* v. *United States* (1895), 156 US 51 (15 S Ct 273, 39 L ed 343).

The court in refusing to give such a charge, did not commit reversible error. *People* v. *Neitzel* (1940), 295 Mich 353.

Defendant Loncar claims that a witness gave perjured testimony. The record shows that during the trial of defendants Loncar and Welsh, accomplice James Wilson (who had pleaded guilty) gave very damaging testimony on behalf of the prosecution. During the interval following this trial and the perfecting of Loncar's appeal to the Michigan Supreme Court, Wilson made an affidavit while in Jackson prison, accusing the prosecuting attorney of a "deal" with him for false testimony. In defendant Loncar's application for a writ of certiorari, a copy of such affidavit was attached. The Supreme Court ordered a rehearing before the trial court for a determination of the issue of perjury. This was done without defendant Loncar's presence and resulted in a deci-

---

[2] See CL 1948, § 750.92 (Stat Ann 1962 Rev § 28,287),—REPORTER.

sion that Wilson had lied in the affidavit and that he had told the truth in the trial. The defendant's petition for a writ of certiorari was denied by the Supreme Court.

The object of a criminal trial is to ascertain the truth and render a fair trial to one accused of crime. There is ample evidence to support the jury's determination of the guilt of the defendant. The trial proceedings were in compliance with the due process of law. Defendant Loncar's constitutional rights were not invaded. He was represented by very able counsel. He had a fair trial. None of the defendant's assignments of error, nor all of them, when considered together, indicate that there has been reversible error or miscarriage of justice in defendant's trial.

Defendant's conviction is affirmed.

LESINSKI, C. J., and QUINN, J., concurred.