295 S.E.2d 902

**STATE of West Virginia**

v.

**Shelly Lynn NEIDER.**

**No. 15143.**

Supreme Court of Appeals of
West Virginia.

Sept. 20, 1982.

Harry G. Deitzler, Pros. Atty. and Dennis R. Lewis, Asst. Pros. Atty., Williamstown, for appellee.

Ernest M. Douglass, Parkersburg, for appellant.

MILLER, Chief Justice:

The defendant in this proceeding, Shelly Lynn Neider, was sentenced by the Circuit Court of Wood County to ten years in the state penitentiary for aggravated or armed robbery.[1] On appeal she argues that larceny was a lesser included offense under her robbery indictment and consequently the trial court erred in refusing to give a larceny instruction. She also claims that some members of the jury panel were tainted by a newspaper article relative to a jailbreak in which she was involved. After examining the questions presented, we disagree with the defendant's assertions, and we affirm the judgment of the circuit court.

On July 9, 1979, a grand jury in Wood County returned an indictment charging that the defendant, armed with a deadly weapon, had robbed one Jeffrey Craig Dooley of sixty dollars. The defendant was tried by a jury on December 19 and 20, 1979. In the course of the trial, Mr. Dooley stated that the defendant appeared in the store where he was working. As she approached the counter where the cash register was located, she said: "Give me all your money or you are dead." At the time, the defendant had a closed pocketknife in her hand. Mr. Dooley testified that he asked her if she was serious. She said "yes" and opened the knife. Dooley then opened the cash register and gave the defendant the money. Thereupon the defendant ran out of the store.

Mr. Dooley testified that the blade of the knife was about three inches long and that the defendant held it about a foot away from him after she opened it and that he was placed in fear for his safety.

The defendant's story was that she had been drinking and taking "acid" and that she did not have perfect recall of the incident. She said, "I remember setting out to rob a store. I remember threatening Jeff Dooley." Beyond that she could not testify about what happened.

At the conclusion of the evidence defense counsel offered an instruction which would have allowed the jury to find the defendant guilty of armed robbery, guilty of unarmed robbery, guilty of petit larceny, or not guilty. The court refused to give the instruction and informed the jury that the only possible verdicts in the case were guilty of armed robbery or not guilty.

The question whether a defendant is entitled to an instruction on a lesser included offense involves a two-part inquiry. The first inquiry is a legal one having to do with whether the lesser offense is by virtue of its legal elements or definition included in the greater offense. Our standard test for this inquiry is contained in Syllabus Point 1 of *State v. Louk,* 169 W.Va. 24, 285 S.E.2d 432 (1981):

> "The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense."[2]

---

1. In *State v. Harless,* 168 W.Va. 707, 285 S.E.2d 461 (1981), we suggested use of the terms "aggravated" and "nonaggravated" robbery in lieu of "armed" and "unarmed" robbery as being more compatible with our robbery statute distinctions. W.Va.Code, 61–2–12. The chief difference between the two categories is that aggravated robbery occurs by the use of physical violence or by use of a firearm or other dangerous weapon while nonaggravated robbery is through intimidation by placing the victim in fear of bodily injury.

2. Our legal test is comparable to that adopted in other jurisdictions. *E.g., State v. Branch,* 108 Ariz. 351, 498 P.2d 218 (1972); *State v. Brown,* 173 Conn. 254, 377 A.2d 268 (1977); *McCullers v. State,* 206 So.2d 30 (Fla.App.1968); *Cook v. State,* 258 Ind. 667, 284 N.E.2d 81 (1972); *State v. Carmichael,* 405 A.2d 732 (Me.1979); *People*

*See State v. Daggett,* 167 W.Va. 411, 280 S.E.2d 545 (1981); *State v. Bailey,* 159 W.Va. 167, 220 S.E.2d 432 (1975).

The second inquiry is a factual one which involves a determination by the trial court if there is evidence which would tend to prove such lesser included offense. Our law in this area is not extensively developed. Our leading case on this point is *State v. Allen,* 131 W.Va. 667, 49 S.E.2d 847 (1948), where this Court stated in its single Syllabus:

> "Where, on the trial of an indictment for murder, the homicide charged is clearly proved or admitted, and there is appreciable evidence in the case tending to show the commission of a particular offense embraced within the charge contained in the indictment, it is error not to instruct the jury on the nature, elements and punishment for the offense to which such evidence relates, when request therefor is made either by the State or the defendant."

*Allen* drew heavily on general instructional law to the effect that an instruction whose theory is supported by some evidence should be given. *Allen* dealt with two lesser included offenses which were embodied in an instruction covering both voluntary and involuntary manslaughter on a general murder indictment. *Allen* has not been frequently cited and this may be because most of our lesser included offense cases have turned on the first step analysis and the legal determination that the lesser offense was not included in the definition of the greater offense.

We did in *State v. Spicer,* 162 W.Va. 127, 245 S.E.2d 922 (1978), recognize the *Allen* principle and concluded under the facts of that case there was no appreciable evidence to warrant the giving of an unarmed robbery instruction as a lesser included offense of armed robbery.

*v. Simpson,* 5 Mich.App. 479, 146 N.W.2d 828 (1966); *State v. Bishop,* 90 Wash.2d 185, 580 P.2d 259 (1978).

**3.** Historically, the doctrine of lesser included offenses evolved as an aid to the prosecution when it failed to prove all of the elements of the

There is no doubt that *Allen's* "appreciable evidence" is a rather general standard for resolving the fact question of whether a lesser included offense instruction should be given under the evidence. Another test used in some jurisdictions which seems equally vague is that the evidence should produce a rational basis for a verdict acquitting the defendant of the greater offense charged and convicting him of the lesser charge. *E.g., State v. Brown,* 173 Conn. 254, 377 A.2d 268 (1977); *State v. Nelson,* 297 N.W.2d 285 (Minn.1980); *State v. Kyle,* 628 P.2d 260 (Mont.1980); *State v. Weik,* 206 Neb. 217, 292 N.W.2d 289 (1980); *State v. Poss,* 298 N.W.2d 80 (S.D.1980); *Hawthorne v. State,* 99 Wis.2d 673, 299 N.W.2d 866 (1981).

■ It is apparent that because the legal definition of a lesser included offense requires its elements to be embraced within the greater offense, the primary factual inquiry will center on those elements of the greater offense which are different from the elements of the lesser offense. This has led a number of courts to formulate the rule that unless there is some factual conflict over the disparate elements, a lesser included offense instruction is not warranted.

■ Thus, in *Sansone v. United States,* 380 U.S. 343, 350, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882, 888 (1965), this rule was stated: "A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense." *See also Valentine v. State,* 617 P.2d 751 (Alaska 1980); *People v. Karasek,* 63 Mich. App. 706, 234 N.W.2d 761 (1975); *State v. Vicars,* 207 Neb. 325, 299 N.W.2d 421 (1980); *State v. Howland,* 119 N.H. 413, 402 A.2d 188 (N.H.1979); *State v. Roseman,* 279 N.C. 573, 184 S.E.2d 289 (1971).[3]

greater crime and sought to obtain a conviction on a lesser charge. The defendant seeks to utilize the doctrine to obtain a less severe punishment. With the proliferation of statutory offenses the entire subject presents a difficult area in which to develop specific guidelines. This subject has received little analytical atten-

■ It seems quite logical to require some evidentiary conflict or evidentiary insufficiency as to the elements of the greater offense which differ from the elements of the lesser included offense in order to require the giving of a lesser included offense instruction. If there is no dispute as to these differing elements the State has conclusively proven the greater offense. The defendant is not entitled to claim a lesser included offense instruction because he has in effect not shown any conflict in proof as to the elements of the greater offense. To hold otherwise would mean as to those crimes which do carry in their legal definition lesser included offenses a defendant would always be entitled to a lesser included offense instruction even though there was no factual conflict as to the elements making up the greater offense. In other words, the fact that a lesser offense is included within a greater offense does not automatically entitle a defendant to obtain an instruction on the lesser included offense.

The simplest illustration would be the case where the defendant relies on the defense of alibi and then asserts the right at the conclusion of the trial to have an instruction on the lesser included offense, where there is no evidence to contradict the State's case except the alibi.[4] The defendant is not entitled to a lesser included offense instruction in this case because there is no conflicting evidence as to the commission of the greater offense except the alibi. This is a complete defense to the entire crime, including the greater and any lesser included offense, and would entitle the defendant to an acquittal if believed by the jury. However, because an alibi does not factually contest the elements of the greater offense and particularly those elements that differ from the lesser included offense, there is no basis for a lesser included offense instruction. *See State v. Ruddle*, 170 W.Va. 669, 295 S.E.2d 909 (1982). *See also People v. Reed*, 180 Colo.

16, 502 P.2d 952 (1972); *State v. Cameron*, 216 Kan. 644, 533 P.2d 1255 (1975); *People v. Loncar*, 4 Mich.App. 281, 144 N.W.2d 801 (1966). The same reasoning would apply to the defense of insanity. *See Valentine v. State, supra.* Cf. *State v. Vicars, supra* (drunkenness).

This point also can be illustrated by *State v. Spicer, supra,* where the defendant was charged with an armed robbery and sought an instruction on unarmed robbery. We concluded that there was no conflict in the evidence which showed the defendant had used a knife in robbing the victim and therefore the defendant was not entitled to a lesser included offense instruction on unarmed robbery.

We believe that a further refinement to our *State v. Allen* general standard is helpful and therefore hold that where there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser included offense, then the defendant is not entitled to a lesser included offense instruction.

■ With these two general principles established for resolving a lesser included offense inquiry, we proceed to apply them to the present case. We first address the question whether under the legal definition test larceny is a lesser included offense of robbery. In *State v. Harless*, 168 W.Va. 707, 285 S.E.2d 461 (1981), we discussed at some length the crime of robbery. We stated in Syllabus Point 1 the common law definition of robbery:

> "At common law, the definition of robbery was (1) the unlawful taking and carrying away, (2) of money or goods, (3) from the person of another or in his presence, (4) by force or putting him in fear, (5) with intent to steal the money or goods."

---

tion from commentators. *See generally* George, *Lesser Included Offenses in Michigan,* 1975 Det. Coll.L.Rev. 35; Bennett, *The Lesser Included Offense Doctrine: A Present Day Analysis for Practitioners,* 5 Conn.L.Rev. 255 (1972).

**4.** This factual issue, of course, is often not presented at trial in such simple terms as the State's case itself may contain factual contradictions as to the proof of the disparate elements of the greater offense.

We indicated in Syllabus Point 2 of *Harless, supra,* that at common law there were no degrees of robbery.[5] In *Harless* we also reviewed the history of our robbery statute, W.Va.Code, 61–2–12 and concluded in Syllabus Point 3 that its primary purpose was to set the degrees of robbery: "W.Va. Code, 61–2–12, enacted in 1931, divides robbery into two separate classes calling for different penalties: (1) robbery by violence or by the use of a dangerous weapon, and (2) all other robberies."

■ We have in the past recognized that our robbery statute must be read in conjunction with the common law elements of larceny. *E.g., State ex rel. Vandal v. Adams,* 145 W.Va. 566, 115 S.E.2d 489 (1960); *Franklin v. Brown,* 73 W.Va. 727, 81 S.E. 405 (1914).

■ Much the same situation obtains with regard to our crime of larceny. As we stated in note 2 of *State v. Louk, supra:* "We still retain the common law definition of larceny even though our statute, W.Va.Code, 61–3–13, dividing the crime into grand and petit larceny does not purport to define the elements of larceny. We also have certain statutes dealing with specialized forms of larceny." In Syllabus Point 3 of *State v. Louk, supra,* we set out the common law definition of larceny:

> "To support a conviction for larceny at common law, it must be shown that the defendant took and carried away the personal property of another against his will

and with the intent to permanently deprive him of the ownership thereof."

It is clear that robbery at common law encompassed the same elements as a larceny and included two additional elements: the taking has to be from the person of another or in his presence and such taking has to be by force or putting the person in fear.[6]

Other jurisdictions have uniformly held, in the absence of some peculiar statute, that a robbery includes all of the elements of larceny and, therefore, larceny is a lesser included offense of robbery. *E.g., Dove v. Peyton,* 343 F.2d 210 (4th Cir. 1965); *Nix v. State,* 251 Ala. 1, 36 So.2d 456 (1948); *Scifres v. State,* 228 Ark. 486, 308 S.W.2d 815 (1958); *People v. Rusk,* 348 Ill. 218, 180 N.E. 863 (1932); *State v. Fonza,* 254 Iowa 630, 118 N.W.2d 548 (1962); *State v. Hackett,* 166 La. 261, 117 So. 141 (1928); *State v. Parker,* 262 N.C. 679, 138 S.E.2d 496 (1964); *Throneberry v. Resolute Ins. Co.,* 206 Tenn. 216, 332 S.W.2d 227 (1960); *State v. Deso,* 110 Vt. 1, 1 A.2d 710 (1938); *Bazemore v. Com.,* 210 Va. 351, 170 S.E.2d 774 (1969); *Champlain v. State,* 53 Wis.2d 751, 193 N.W.2d 868 (1972); 42 C.J.S. *Indictments and Informations* § 293 (1944). Of course whether the larceny is grand or petit is determined by the value of the property taken under W.Va.Code, 61–3–13 (1977) and the dividing line is two hundred dollars.[7]

■ Given this, we conclude under the legal test set out in Syllabus Point 1 of

---

5. Syllabus Point 2 of *Harless, supra,* states: "At common law, robbery could be accomplished either by actual physical force or violence inflicted on the victim or by intimidating the victim by placing him in fear of bodily injury. There were no degrees or grades of common law robbery."

6. In LaFave & Scott, *Criminal Law* 692 (1972 ed.), robbery is defined as follows:
   "Robbery, a common-law felony, and a felony in all jurisdictions today, may be thought of as larceny-plus: all six elements of larceny are needed, plus these two added elements: (a) the taking of the property must be from the person of the victim or in his presence, and (b) the taking must be accomplished by means of violence or intimidation."

7. W. Va.Code, 61–3–13 (1977) provides:

"(a) If any person commits simple larceny of goods or chattels of the value of two hundred dollars or more, such person shall be guilty of a felony, designated grand larceny, and, upon conviction thereof, shall be confined in a penitentiary not less than one nor more than ten years, or, in the discretion of the court, be confined in the county jail not more than one year and shall be fined not more than five hundred dollars.

"(b) If any person commits simple larceny of goods or chattels of the value of less than two hundred dollars, such person shall be guilty of a misdemeanor, designated petit larceny, and, upon conviction thereof, shall be confined in the county jail for a term not to exceed one year or fined not to exceed five hundred dollars, or both, in the discretion of the court."

*State v. Louk, supra,* that larceny is a lesser included offense in robbery.

■■■ As previously stated, the additional elements which separate robbery from larceny are that the taking has been from the person of another or in his presence and that the taking is by force or putting the person in fear. Under the factual test discussed above for the defendant to have been entitled to an instruction on larceny as a lesser included offense it was essential for her during trial to have contested the distinguishing elements. After examining the record, we can find no evidence whatsoever disputing the fact that the defendant took money from Mr. Dooley by presenting a deadly weapon, the knife, and thereby placing him in fear of bodily injury. Accordingly, we conclude that the trial court did not err in refusing to give the lesser included offense instruction offered by defense counsel.

The defendant's second assertion arises out of the voir dire of the jury panel. During voir dire, in response to a question as to whether any of the veniremen had read anything about the crime charged, a venireman named Hynes indicated that he had read about a recent jailbreak. Upon continued questioning of the panel several other veniremen indicated that they had read about the jailbreak. Following disclosure of this, the court permitted defense counsel to conduct an individual examination of each of the veniremen who had indicated some knowledge of the article. The examinations failed to bring out specifically what was contained in the article or articles about the jailbreak. The record of the individual voir dire does not demonstrate that the veniremen had any specific knowledge regarding the jailbreak.[8]

In the course of the individual voir dire, several veniremen were dismissed. Those who remained indicated that they could base their decision in the case on the evidence presented, and defense counsel did

not object to the seating of several of the veniremen on the panel even though they indicated they had read about the jailbreak. After the individual voir dire was concluded, the court proceeded as follows:

"Ladies and gentlemen of the jury, considering everything that has occurred, do you believe that you can hear the evidence presented to you here in the courtroom, the law as given to you by the court and give both to the State of West Virginia, on the one hand, and to Shelly Lynn Neider, on the other hand, a fair and impartial trial with your verdict based solely on the evidence presented to you in the courtroom and the law as given to you by the Court? If you can do that, please raise your hand. All right. All hands are up."

■■■ The trial court correctly followed the law as set out in Syllabus Point 6 of *State v. Williams,* 160 W.Va. 19, 230 S.E.2d 742 (1976), by permitting detailed individual voir dire of the veniremen who acknowledged seeing the newspaper article. In *Williams* we held that once it was disclosed that some of the jury panel may have read newspaper articles bearing upon the trial of the case, it was incumbent on the court to undertake specific questions to determine whether such articles have influenced the jury:

"A trial court must inquire beyond a simple and direct questioning of a juror as to whether he can decide a case fairly and impartially after having read news articles related to the trial of a case. Specific questions should be asked in order to determine whether a juror, even without his own knowledge, may be biased or prejudiced."

■■■ In *State v. Beck,* 167 W.Va. 830, 286 S.E.2d 234 (1981), we recognized the rule enunciated by the Supreme Court of the United States in *Murphy v. Florida,* 421 U.S. 794, 799–800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589, 594–95 (1975), that having

---

**8.** From some of the questions posed on the individual voir dire, it is possible to surmise that the defendant may have been involved in the jailbreak. The lack of a well developed record on this point would perhaps alone be

sufficient to preclude consideration of this ground of error. *Cf. State v. Stewart,* 161 W.Va. 127, 239 S.E.2d 777 (1977); *State v. Byers,* 159 W.Va. 596, 224 S.E.2d 726 (1976).

some knowledge of the case does not automatically disqualify a juror. We stated in Syllabus Point 3:

" 'The true test as to whether a juror is qualified to serve on the panel is whether without bias or prejudice he can render a verdict solely on the evidence under the instructions of the court.' Syllabus Point 1, *State v. Kilpatrick*, 158 W.Va. 289, 210 S.E.2d 480 (1974)."

In the case before us the trial court conducted an individual voir dire of the jury to determine the effect of the jailbreak information on the involved veniremen. We cannot conclude from the record that the veniremen to whom defense counsel objected and who were permitted to remain on the panel were unable to render a verdict solely on the evidence adduced during the trial. Thus, they are not disqualified under the rule enunciated in *State v. Beck, supra.*

For the reasons stated, the judgment of the Circuit Court of Wood County is affirmed.

Affirmed.