IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 19-0142
_____

FILED
November 6, 2020
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

MARK A. WILSON, JR.,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Harrison County
Honorable James A. Matish, Judge
Criminal Action No. 18-F-241

AFFIRMED
_____

Submitted: September 2, 2020
Filed: November 6, 2020

Justin M. Collin, Esq.                                      Patrick Morrisey, Esq.
Appellate Advocacy Division                     Attorney General
Public Defender Services                             Holly M. Flanigan, Esq.
Charleston, West Virginia                           Assistant Attorney General
                                                                          Charleston, West Virginia

JUSTICE WORKMAN delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "Whether facts are sufficient to justify the delivery of a particular instruction is reviewed by this Court under an abuse of discretion standard. In criminal cases where a conviction results, the evidence and any reasonable inferences are considered in the light most favorable to the prosecution."  Syl. Pt. 12, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994).

2.      "A trial court's refusal to give a requested instruction is reversible error only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense." Syl. Pt. 11, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994).

3.      "'"The plain error doctrine of W. Va. R Crim. P. 52(b), whereby the court may take notice of plain errors or defects affecting substantial rights although they were not brought to the attention of the court, is to be used sparingly and only in those circumstances in which a miscarriage of justice would otherwise result." Syllabus Point 2, *State v. Hatala*, 176 W. Va. 435, 345 S.E.2d 310 (1986).' Syl. Pt. 4, *State v. Grubbs*, 178 W. Va. 811, 364 S.E.2d 824 (1987)."  Syl. Pt. 3, *State ex rel. Games-Neely v. Yoder*, 237 W. Va. 301, 787 S.E.2d 572 (2016).

i

4. "'To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceeding.' Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995)." Syl. Pt. 4, *State ex rel. Games-Neely v. Yoder*, 237 W. Va. 301, 787 S.E.2d 572 (2016).

5. ""The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense." Syl. Pt. 1, *State v. Louk*, 169 W. Va. 24, 285 S.E.2d 432 (1981), *overruled on other grounds by State v. Jenkins*, 191 W. Va. 87, 443 S.E.2d 244 (1994).' Syllabus Point 4, *State v. Wilkerson*, 230 W. Va. 366, 738 S.E.2d 32 (2013)." Syl. Pt. 5, *State v. Bland*, 239 W. Va. 463, 801 S.E.2d 478 (2017).

6. "Where there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser included offense, then the defendant is not entitled to a lesser included offense instruction." Syl. Pt. 2, *State v. Neider*, 170 W. Va. 662, 295 S.E.2d 902 (1982).

ii

7.     The misdemeanor offense set forth in West Virginia Code § 61-5-17(e) (2014) is a lesser included offense of the felony offense set forth in West Virginia Code § 61-5-17(f) (2014).

**WORKMAN, Justice:**

Following his conviction in the Circuit Court of Harrison County, West Virginia, on a felony charge of fleeing from a law enforcement officer in a vehicle, while operating said vehicle "in a manner showing a reckless indifference to the safety of others[,]" West Virginia Code § 61-5-17(f) (2014),[1] petitioner Mark A. Wilson, Jr. ("Petitioner") seeks reversal based on two alleged errors: the trial court's giving of an instruction that evidence of flight may be considered by the jury, along with other facts and circumstances, to show consciousness of guilt; and the court's failure to instruct the jury on a lesser included offense of fleeing in a vehicle but without reckless indifference, West Virginia Code § 61-5-17(e) (2014).[2]

After careful consideration of the parties' briefs and oral arguments, the appendix record, and the applicable law, we reject Petitioner's arguments and affirm his conviction.

---

[1] Although portions of West Virginia Code § 61-5-17 have recently been amended, *see* Acts 2019, c. 73, and Acts 2020, c. 82, subsection (f) remains unchanged.

[2] *See supra* note 1; subsection (e) of the statute also remains unchanged.

## I. Facts and Procedural Background

On October 8, 2017, Trooper R.W. Jones observed Petitioner driving a pickup truck south on I-79, just north of the 125 mile marker, in Harrison County, West Virginia. Noting that the vehicle had a Department of Highways ("DOH") license plate, which Trooper Jones considered to be "very odd" in light of the vehicle's age and appearance,[3] he pulled alongside the truck, whereupon Petitioner pulled the hood of his sweatshirt over his head. Trooper Jones dropped back and ran the vehicle's plates through Dispatch, which reported that there was no record of them.[4] At this point, Trooper Jones activated his lights to stop the truck.

Rather than stop, Petitioner exited the interstate, turned at a stop sign, and took off at high speed going north on Route 73, whereupon the trooper activated his siren and dash camera and gave chase. The entire twenty minute pursuit was captured on the dash camera, *see* text *infra*, and showed Petitioner driving seventy miles an hour on roads with speed limits of forty-five or fifty-five; making sudden turns onto different roads, and then back around again, in an obvious attempt to evade pursuit; driving left of center on multiple occasions; passing in blind turns; almost colliding head-first with a street sweeper; "blowing through" stop signs; careening "[t]hrough multiple fences and over – through a

---

[3] Petitioner's vehicle was old and multicolored, whereas DOH vehicles, Trooper Jones explained to the jury, are usually no more than a few years old and almost always white with a state seal emblazoned on the side.

[4] At trial, Trooper Jones testified that the plates had expired in 1991.

ridge, through a creek, over a creek"; driving through yards; and blasting through fences and gates. Multiple law enforcement officers were involved in the pursuit by the time of its inglorious end: after multiple attempts to evade his pursuers, Petitioner finally rammed through a wire fence, drove down into a ravine and back up into a field (thankfully missing some horses), abandoned his vehicle, and escaped on foot, dropping his wallet, identification, and mail as he fled.

Petitioner apparently decided that his best course of action was to part forever with the badly damaged and now-abandoned truck. Accordingly, several days after the chase, he reported to the State Police Detachment in Fairmont to remove the vehicle from the sex offender registry.[5] The trooper who was updating the registry recognized the vehicle as the truck which had been involved in the earlier pursuit; accordingly, he contacted Trooper Jones, who came to the Detachment and attempted to interview Petitioner. Although Petitioner declined to be interviewed, he made a number of incriminating statements as Trooper Jones escorted him from the Detachment: he asked whether everything would go away if his father paid for any damages, and he informed Trooper Jones that the DOH plate on the truck was not stolen, but rather had been found

---

[5] Petitioner was a registered sex offender who had previously been convicted on four felony counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust to a child, West Virginia Code § 61-8D-5 (2020).

on a vehicle parked behind his father's house.[6]  While Petitioner was at the Detachment, Trooper Jones observed that he had a black eye and was "covered from head to toe, hands, face and everything with scratches and scrapes as though he just ran through the woods or some briars."  The significance of this observation became apparent at trial, when the trooper testified that the field in which Petitioner had abandoned his truck was covered in brush and briars.

On September 5, 2018, Petitioner was indicted on three charges: fleeing from law enforcement in a vehicle, with reckless indifference to the safety of others; felony destruction of property; and misdemeanor destruction of property.  Prior to trial, the circuit court dismissed both destruction of property charges without prejudice.

At trial, which was held on November 13, 2018, Petitioner's strategy was to admit the flight in a vehicle but dispute that he had reckless indifference to the safety of others.  In this regard, defense counsel told the jury in opening statement that on the dash camera video, "there are instances where you can see Mr. Wilson uses his blinker, slows down when there's traffic coming in the other direction. He's putting *himself* in danger, not others.  He moves off well-traveled roads, down one-lane roads." (Emphasis added.) In his cross-examination of Trooper Jones, the only witness at trial, counsel established

---

[6] During pre-trial proceedings, the circuit court denied Petitioner's motion to suppress these statements, finding that the utterances had been voluntarily made. Petitioner has not challenged this ruling on appeal.

that Petitioner exited the interstate almost immediately after the chase began; that there was only light traffic on the roads during the chase; that Petitioner attempted to, and did, manage to avoid a collision with the street sweeper; and that the chase had been authorized by Dispatch because conditions at the time – light traffic, no inclement weather, no untoward road conditions – presented minimal danger to Petitioner, the trooper, and the public. Finally, in closing argument defense counsel drove his point home: "Was he driving recklessly? Yes. Was he driving with a reckless indifference? No."

Prior to submission of the case to the jury, the circuit court held a charge conference to consider the parties' proposed instructions. Of relevance to the instant appeal, the court gave State's Instruction No. 6, dealing with "evidence of flight," and refused to give an instruction on the lesser included offense of fleeing in a vehicle but without reckless indifference. The circumstances surrounding the court's rulings will be set out in detail, *infra*, in our analysis of the issues raised by Petitioner. Having been charged by the court and having heard the argument of counsel, the jury withdrew to deliberate, and soon thereafter returned a verdict of guilty.

On January 19, 2019, Petitioner was sentenced to an indeterminate term of one to five years in prison, with credit for fifty-nine days of time served, fined $1,000.00 plus the costs of the proceedings, and ordered to pay restitution for the property damage resulting from his wild ride. This appeal followed.

5

## II. Standard of Review

Petitioner raises two issues in this case, both having to do with the circuit court's charge to the jury. First, Petitioner contends that the court's giving of a flight instruction was erroneous and prejudicial; second, he contends that the court's failure to instruct the jury on a lesser included offense was likewise erroneous and prejudicial. With respect to the first issue, our standard of review was established in Syl. Pt. 12, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994): "Whether facts are sufficient to justify the delivery of a particular instruction is reviewed by this Court under an abuse of discretion standard. In criminal cases where a conviction results, the evidence and any reasonable inferences are considered in the light most favorable to the prosecution."

With respect to the second issue, our standard of review would ordinarily be that set forth in syllabus point 11 of *Derr*:

> A trial court's refusal to give a requested instruction is reversible error only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense.

*Id*. at 168, 451 S.E.2d at 734. Here, however, because the issue was not properly preserved for appellate review pursuant to Rule 30 of the West Virginia Rules of Criminal

Procedure,[7] we review the matter under the plain error doctrine. In this regard, we have held that

> """[t]he plain error doctrine of W. Va. R Crim. P. 52(b),[8] whereby the court may take notice of plain errors or defects affecting substantial rights although they were not brought to the attention of the court, is to be used sparingly and only in those circumstances in which a miscarriage of justice would otherwise result." Syllabus Point 2, *State v. Hatala*, 176 W. Va. 435, 345 S.E.2d 310 (1986).' Syl. Pt. 4, *State v. Grubbs*, 178 W. Va. 811, 364 S.E.2d 824 (1987)."

Syl. Pt. 3, *State ex rel. Games-Neely v. Yoder*, 237 W. Va. 301, 787 S.E.2d 572 (2016) (footnote added). It is well established in this Court's jurisprudence that "'[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceeding.' Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995)." Syl. Pt. 4, *Games-Neely,* 237 W. Va. at 302, 787 S.E.2d at 573.

## III. Discussion

---

[7] Rule 30 provides, in relevant part, that

> [n]o party may assign as error the giving or the refusal to give an instruction or the giving of any portion of the charge unless that party objects thereto before the arguments to the jury are begun, stating distinctly the matter to which that party objects and the grounds of the objection[.]

[8] Subsection (b) of Rule 52(b) provides: "*Plain error*. -- Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

We first address Petitioner's contention that the circuit court erred in giving State's Instruction No. 6, which provided:

> The Court instructs the jury that evidence of flight by the defendant is competent, along with other facts and circumstances on the defendant's guilt, but the jury should consider any evidence of flight with caution since such evidence has only a slight tendency to prove guilt.
>
> The jury is further instructed that the farther away the flight is from the time of the alleged commission of the offense the less weight it will be entitled to, and the circumstances should be cautiously considered since flight may be attributed to a number of reasons other than consciousness of guilt.

In his brief, Petitioner states that he "objected to the flight instruction because the indictment charged fleeing." A review of the record indicates that this statement, while correct, is somewhat misleading in its brevity. The colloquy which took place during the charge conference demonstrates that counsel's objection to the instruction fell short of the standard established in Rule 30 of the West Virginia Rules of Criminal Procedure, *see supra* note 5. Further, the colloquy clearly demonstrates that the instruction related to Petitioner's flight on foot after he abandoned the vehicle, *not* his madcap journey across and through highways, roads, ravines, yards and fences.

> THE COURT: State's 6?
>
> MR. JONES: I would object to State's 6, Your Honor. I don't know that that's a necessary instruction in this case.
>
> THE COURT: Mr. Houchin?
>
> MR. HOUCHIN: I mean, the State thinks it's an appropriate instruction given the evidence that was presented, but. The officer testified he identified the defendant as the

8

individual in the truck and *when he got to the truck, the individual had left the truck*.

THE COURT: It'll be given. Yes, sir?

MR. JONES: I was just going to say that talking – there was no notice or hearing that he intended to use that evidence of *flight after the fact*.

THE COURT: There was no request made for an in camera hearing from either the State or the defendant in this case, so we didn't conduct one.

MR. JONES: Correct.

THE COURT: Yeah. There was no request made.

MR. JONES: Well, I mean, I guess my issue is just the instruction – I mean, the charge is fleeing. And while there was testimony that there was –

MR. HOUCHIN: The State will just move to withdraw the instruction. I don't want to overburden the jurors anyway.

THE COURT: Well, I don't know that it's something that can be withdrawn. I think it's something that should be given. It's a defendant's instruction, really.

MR. HOUCHIN: Yeah. I mean I just submitted it on behalf of the State to try to be thorough, but I'm certainly not in a position to advocate for it. The State doesn't really care.

THE COURT: Well, you may care if the Supreme Court looks at it and says it should've been given. The Court will give that instruction.

(Emphasis added.)


On appeal, Petitioner makes a far more comprehensive argument than he made during the colloquy, which argument consisted of four words: "the charge is

9

fleeing."[9]  First, Petitioner contends that the charge against him, which he designates simply as "flight," encompassed both his vehicular flight and his subsequent escape by foot.  We may quickly dispose of this argument with a review of the statute under which Petitioner was indicted, West Virginia Code § 61-5-17(f), which provides:

> A person who intentionally flees or attempts to flee in a vehicle from a law-enforcement officer, probation officer, or parole officer acting in his or her official capacity after the officer has given a clear visual or audible signal directing the person to stop, and who operates the vehicle in a manner showing a reckless indifference to the safety of others, is guilty of a felony and, upon conviction thereof, shall be fined not less than $1,000 nor more than $2,000 and shall be imprisoned in a state correctional facility not less than one nor more than five years.

Under the clear and unambiguous terms of the statute, the crime charged wasn't simply "flight," Petitioner's carefully elided formulation of the offense; rather, it was flight *in a vehicle* and operation *of that vehicle* in a manner showing reckless indifference to the safety of others.  In short, once Petitioner exited and abandoned his vehicle, the charged crime was complete.  Thereafter, Petitioner's escape on foot was a

---

[9] On appeal, Petitioner does not contend that he was entitled to a pre-trial hearing on the issue.  In this regard *see State v. Criser*, No. 17-0997, 2018 WL 6015835, at *4 (W. Va. Nov. 16, 2018) (memorandum decision):

> On appeal, petitioner argues that the evidence of flight should have been excluded because the circuit court failed to hold a hearing on whether the evidence was more probative than prejudicial. However, the record on appeal does not reveal, nor does petitioner claim, that he requested any such hearing either prior to trial or when the officers testified.

separate act[10] which took place after the charged conduct, bringing it within the ambit of our many cases holding that evidence of flight after the commission of a crime is admissible as evidence of the crime. *See State v. Payne*, 167 W. Va. 252, 265 & n.2, 280 S.E.2d 72, 79-80 & n.2 (1981) ("That evidence of flight is admissible upon a criminal trial is an almost universal rule.") (collecting numerous cases from federal and state jurisdictions).

Next, Petitioner argues that the instruction was an impermissible comment on the evidence, specifically, that the instruction "told the jury that the latter stage of Petitioner's flight could be used as evidence of his guilty conscious [sic] regarding the earlier stage of his flight." Again, this argument ignores the substance of the charge against Petitioner, which was flight *in a vehicle* from a law enforcement officer. As before, once Petitioner had exited and abandoned the vehicle, the charged crime was complete; therefore, evidence of his escape on foot after commission of the crime was properly used as evidence of the crime, fleeing in a vehicle from law enforcement.

---

[10] In fact, Petitioner's flight on foot could have been charged as a separate offense under West Virginia Code § 61-5-17(d) (2014), which provided, in relevant part, that

> [a] person who intentionally flees or attempts to flee by any means other than the use of a vehicle from a law-enforcement officer, probation officer or parole officer acting in his or her official capacity who is attempting to make a lawful arrest of the person, and who knows or reasonably believes that the officer is attempting to arrest him or her, is guilty of a misdemeanor[.]

In this regard, we note that the Legislature's subsequent amendments to subsection (d), Acts 2019, c. 73, effective June 7, 2019, are not material to the instant case.

Additionally, Petitioner argues that other jurisdictions have held that "[w]hen the basis of a crime with which a person is charged is flight . . . the prejudice of the trial court's pointing out evidence of flight is obvious[,]" citing *State v. Girard*, 578 P.2d 414, 417-18 (Ore. 1978) and *Graves v. Commonwealth*, 780 S.E.2d 904, 908 (Va. 2016). Both of these cases are easily distinguishable from the case at bar. The charge in *Girard* was escape from a law enforcement officer, and therefore every step of the defendant's attempted escape – from running out the door to climbing out the window to heading down the street – was part and parcel of the escape. Similarly, the charge in *Graves* was eluding a law enforcement officer, and every step of the defendant's attempt to avoid capture – he led the officer on a high speed chase until he was finally pulled over and arrested – was, again, part and parcel of the attempt to elude. In contrast, here the charge was flight *in a vehicle*, a crime that was complete when Petitioner abandoned his truck and fled on foot. Petitioner cites no other authority from any jurisdiction that supports his position on facts similar to those in the case at bar, and our research has disclosed none.

Finally, Petitioner argues that giving a flight instruction in this case was reversible error because the instruction failed to specifically state that it concerned Petitioner's flight on foot, not his earlier flight in a vehicle. We disagree. During the charge conference, it was clear that all parties understood the instruction to refer to what defense counsel termed "evidence of flight after the fact." Trooper Jones' testimony (as noted previously, the only evidence at trial) clearly delineated between Petitioner's conduct

12

in leading the officer on a dangerous, high-speed chase, and his subsequent conduct in abandoning his vehicle and fleeing on foot. Under the facts and circumstances of this case, which we consider in the light most favorable to the prosecution,[11] the jury could not have been misled as to the meaning of the circuit court's flight instruction.

In summary, we find that the instruction was a correct statement of long-established law and was properly given under the facts and circumstances of this case. Accordingly, there was no error.

Petitioner's second argument on appeal is that "[t]he trial court denied Petitioner's motion to instruct the jury on fleeing in a vehicle as a lesser included offense." Petitioner did not indicate where in the Appendix Record this alleged motion could be found, as required by Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure,[12] thereby asking this Court to undertake the task of hunting for truffles, in the oft-cited language of *State v. Honaker*, 193 W. Va. 51, 454 S.E.2d 96 (1994).[13] Our review of the

---

[11] *See*, *e.g.*, Syl. Pt. 3, in part, *State v. Bradford*, 199 W. Va. 338, 484 S.E.2d 221 (1997) ("where a conviction results, the evidence and any reasonable inferences are considered in the light most favorable to the prosecution.").

[12] Rule 10(c)(7) provides, in relevant part, that "[t]he argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal."

[13] "[C]ounsel must observe the admonition of the Fourth Circuit that '[j]udges are not like pigs, hunting for truffles buried in briefs' [or somewhere in the lower court's

13

record indicates that contrary to the representation made in Petitioner's brief, there was no motion, written or oral, asking the circuit court to give an instruction on a lesser included offense; and indeed, there was no such instruction offered by Petitioner.

The entirety of the discussion on this issue came at the conclusion of the charge conference.

> THE COURT: Okay. Is there anything else we need to put on the record before we show the jury back in?
>
> MR. HOUCHIN: I don't think so, Judge.
>
> THE COURT: You can talk to your lawyer. Is there a lesser included offense?
>
> MR. HOUCHIN: I don't believe there could – I mean, you might be able to fashion one if there was some other kind of evidence offered, Judge. I don't know of any lesser included with the evidence that was offered that could be given.
>
> THE COURT: Mr. Jones?
>
> MR. JONES: I mean it's just a – would be a regular fleeing without reckless indifference to others.
>
> THE COURT: There would be a lesser included if there was a factual basis for it, but there's no factual basis for a lesser included based upon the evidence that's presented to the Court, so the Court's not giving any type of lesser included instruction in this case.

---

files].… We would in general admonish all counsel that they, as officers of this Court, have a duty to uphold faithfully the rules of this Court." *Honaker*, 193 W. Va. at 56 n. 4, 454 S.E.2d at 101 n. 4 (quoting *Teague v. Bakker*, 35 F.3d 978, 985 n. 5 (4th Cir. 1994)).

Reviewing this brief colloquy, it is clear to this Court that the circuit court raised the issue of a lesser included offense sua sponte. Petitioner did not make a motion, did not offer an instruction, did not offer any statutory citation for a lesser included offense,[14] made only the vaguest of replies to the court's query about a lesser included offense instruction, did not object to the court's determination that no instruction would be given to the jury, and did not raise the issue in his post-trial motion to set aside the verdict or, in the alternative, grant a new trial. Accordingly, we can reach this issue on appeal only if we find that the failure to instruct on a lesser included offense was plain error, which in turn requires us to determine whether there was "'(1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceeding.'" *Games-Neely*, 237 W. Va. at 302, 787 S.E.2d at 573, Syl. Pt. 4, in part.

We begin by determining whether there is, in fact, a lesser included offense to the offense charged in West Virginia Code § 61-5-17(f). In this regard, it is well established in our law that,

> [t]he test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense.

---

[14] In his brief on appeal, Petitioner alleges that the lesser included offense would be that set forth in West Virginia Code § 61-5-17(e). *See* text *infra*.

Syl. Pt. 5, *State v. Bland*, 239 W. Va. 463, 801 S.E.2d 478 (2017) (citing Syl. Pt. 1, *State v. Louk*, 169 W. Va. 24, 285 S.E.2d 432 (1981), *overruled on other grounds by State v. Jenkins*, 191 W. Va. 87, 443 S.E.2d 244 (1994), and Syl. Pt. 4, *State v. Wilkerson*, 230 W. Va. 366, 738 S.E.2d 32 (2013)). Put another way, "all the legal ingredients of the corpus delicti of the lesser offense must be included in the elements of the greater offense." *Bland*, 239 W. Va. at 468, 801 S.E.2d at 483 (citing Syl. Pt. 5, *State v. Vance*, 168 W. Va. 666, 285 S.E.2d 437 (1981)).

With this standard in mind, we examine West Virginia Code § 61-5-17(e), which provides:

> A person who intentionally flees or attempts to flee in a vehicle from a law enforcement officer, probation officer, or parole officer acting in his or her official capacity after the officer has given a clear visual or audible signal directing the person to stop is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than $500 nor more than $1,000 and shall be confined in jail not more than one year.

It requires no complex exegesis to determine that here, "it is impossible to commit the greater offense without first having committed the lesser offense," *Bland*, 239 W. Va. at 464, 801 S.E.2d at 480, Syl. Pt. 4; *see also Wilkerson*, 230 W. Va. at 738 S.E.3d at 369 ("The first inquiry is a legal one having to do with whether the lesser offense is by virtue of its legal elements or definition included in the greater offense."). The language of West Virginia Code § 61-5-17(e) describing the offense of flight from law enforcement in a vehicle, is exactly the same as the language of West Virginia Code § 61-5-17(f) describing the first element of the offense of flight from law enforcement in a vehicle while operating

16

said vehicle in a manner showing reckless indifference to the safety of others. Therefore, we hold that the misdemeanor offense set forth in West Virginia Code § 61-5-17(e) (2014) is a lesser included offense of the felony offense set forth in West Virginia Code § 61-5-17(f) (2014).

Having established that there is a lesser included offense to the crime set forth in West Virginia Code § 61-5-17(f), we must now determine whether the circuit court's failure to give a lesser included offense instruction to the jury was error. The circuit court based its decision, albeit tacitly, on the principle set forth in syllabus point two of *State v. Neider*, 170 W. Va. 662, 295 S.E.2d 902 (1982), wherein this Court held that "[w]here there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser included offense, then the defendant is not entitled to a lesser included offense instruction." *Id*. at 663, 295 S.E.3d at 903. In this regard, the circuit court's remarks to counsel indicate that the court considered the evidence of reckless disregard for the safety of others to be undisputed.

A review of Trooper Jones' testimony reveals that the court's assessment was not accurate. The trooper testified, and the dash camera video showed, that almost immediately after the chase began, Petitioner exited I-79 and thereafter proceeded on secondary roads and streets having minimal traffic; that at some point he used a turn signal; and that he did manage to avoid what appeared to be an imminent collision with a street sweeper. Further, the trooper testified that the chase would have been called off if the

17

conditions existing at the time – traffic, weather, and/or dangerous road conditions – presented more than minimal danger to Petitioner, Trooper Jones, or the public. This evidence, albeit not strong, supported Petitioner's defense and his trial strategy, which was to admit the flight but deny that he acted with reckless indifference to the safety of others. We therefore conclude that under the facts and circumstances of this case, the circuit court's refusal to give a lesser included offense instruction was error. *See*, *e.g.*, *State v. Stalnaker*, 167 W. Va. 225, 227, 279 S.E.2d 416, 417 (1981) (holding that "a trial court must give an instruction for a lesser included offense when evidence has been produced to support such verdict.").

Notwithstanding the above, it will be recalled that we are reviewing this issue under a plain error standard, which requires not only that there is (1) an error, (2) that is plain, but also that the error (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceeding. *Games-Neely*, 237 W. Va. at 302, 787 S.E.2d at 573, Syl. Pt. 4, in part. In this case, the circuit court's failure to instruct on the lesser included offense fails both of the final two prongs of the test. First, defense counsel was not prevented from effectively presenting Petitioner's defense, beginning with his opening statement, continuing with his effective cross examination of Trooper Jones, and concluding with his closing argument. *See Bell*, 211 W. Va. at 311, 565 S.E.2d at 433; *Derr*, 192 W. Va. at 168, 452 S.E.2d at 734. By the time the jury had retired to deliberate, the panel necessarily understood the view of the evidence put forward by counsel: that Petitioner had been foolish and stupid but had *not* evidenced reckless

18

indifference to the safety of others – only to himself. Second, the very fact that Petitioner did not offer a lesser included offense instruction at trial, and did not even mention this issue in his post-trial motions, supports a conclusion that the supposed prejudice to Petitioner from the omission of the instruction is solely a creation of appellate counsel, attempting to breathe life into a long-dead horse. Third, and most significantly, the evidence against Petitioner on all elements of the offense, including the element of reckless indifference, was overwhelming. In light of Trooper Jones' testimony, supported by the dash camera video of the entire wild chase from Harrison County to Taylor County and back to Harrison County, this Court has no trouble in finding that the circuit court's error would not have swayed the verdict and was therefore harmless beyond a reasonable doubt. *See, e.g., State v. Reed*, 218 W. Va. 586, 590, 625 S.E.2d 348, 352 (2005) ("[o]ur cases consistently have held that nonconstitutional errors are harmless unless the reviewing court has grave doubt as to whether the [error] substantially swayed the verdict.").

In summary, we conclude that the circuit court's refusal to instruct the jury on a lesser included offense was error; however, the error did not in any way affect Petitioner's substantial rights or seriously affect the fairness, integrity, or public reputation of the judicial proceeding, and was therefore not reversible error under the applicable standard of review.

## IV. Conclusion

For the foregoing reasons, the judgment of the Circuit Court of Harrison County, West Virginia, is affirmed.

Affirmed.